UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, *EX REL.* DENNIS DODSON, AND THE STATE OF TENNESSEE, *EX REL.* DENNIS DODSON, ) ) ) ) | |
| Plaintiffs, ) ) | Docket No. 1:11-cv-182 |
| vs. ) ) | Judge Collier/Lee |
| THE A.I.M. CENTER, INC., ) ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs, the United States of America and the State of Tennessee, each acting by and through Dennis Dodson, bring this cause of action against Defendant The A.I.M. Center, Inc., and for their cause of action state as follows:

### Introduction

1. This is a civil action to recover damages and all other applicable civil penalties and relief from Defendant for making or causing to be made, false or fraudulent statements, representations and claims to the State of Tennessee's TennCare Program in connection with the events specified hereinafter, from 12 December 2008 to the present.

2. Plaintiffs seek recovery against Defendant pursuant to the Federal False Claims Act, 31 USC §§ 3729, *et seq.*, and the Tennessee False Claims Act, TCA § 71-5-182.

1

## Jurisdiction and Venue

3. This is an action brought pursuant to the Federal False Claims Act, 31 USC §§ 3729, *et seq.*, and the Tennessee False Claims Act, TCA §§ 71-5-182, *et seq.,* and subject matter jurisdiction is invoked pursuant to 31 USC § 3732. This action arises from the wrongful acts of the Defendant incident to charges submitted by Defendant for payment under the TennCare program administered by the State of Tennessee, the funding of which derives from both the United States Government and the State of Tennessee.

## Parties

4. *Qui Tam* Plaintiff Dennis Dodson (hereinafter "Dodson" or "Relator") is a citizen of the United States of America and is a resident of East Ridge, Hamilton County, Tennessee. Dodson was a client of Defendant from 03 November 2008 to 31 March 2010, and as such, visited Defendant's facility located in Chattanooga, Tennessee on a number of occasions. Dodson brings this action on behalf of the United States of America.

5. The A.I.M. Center, Inc. (hereinafter the "AIM Center" or "Defendant") is a not-for-profit corporation organized in and doing business under the laws of the State of Tennessee. At all times material to this action, Defendant operated (and continues to operate) a facility in Chattanooga, Hamilton County, Tennessee, at which it purported (and continues to purport) to offer psychosocial rehabilitation and other outpatient psychiatric rehabilitation services to certain residents of the Chattanooga and Hamilton County area.

6. As required under the Federal False Claims Act, 31 USC § 3730(a)(2), and the Tennessee False Claims Act, TCA § 71-5-183(a)(2), Relator, simultaneously with the filing of this Complaint, provided to the United States Attorney for the Eastern District of Tennessee and to the Attorney General of the State of Tennessee a statement disclosing all material evidence

and information related to this Complaint. This disclosure statement supports the existence of the "submission of a knowingly false or fraudulent claim for payment or approval" under the Federal False Claims Act, 31 USC § 3729(a)(1) and under the Tennessee False Claims Act, TCA 71-5-182(a)(1).

7. The United States of America is here named a plaintiff because funds of the United States of America ("Federal funds") were paid to the AIM Center, Inc. as a result of the false claims alleged in this Complaint. The State of Tennessee is here named a plaintiff because funds of the State of Tennessee ("State funds") were paid to the Defendant as a result of the false claims alleged in this Complaint.

## Summary of False Claims

8. Dodson is a resident of East Ridge, Hamilton County, Tennessee, who has been diagnosed with bipolar disorder.

9. Dodson visited Defendant the AIM Center more than 50 times between 12 December 2008 and 31 March 2010, for various reasons that are described below. Each time he visited, he signed in and out at the registration desk at or near the main entrance to the Defendant's facility.

10. For each occasion upon which Dodson visited the Defendant's building and signed in and out (and on at least one occasion when he did not visit the building at all), the Defendant made and submitted to the TennCare Program a charge of $75.00, allegedly for providing "psychosocial rehabilitation services *per diem*" under CPT Code H2018. Upon information and belief, all charges submitted by Defendant to the TennCare Program were paid to Defendant.

3

11. To make a charge for the provision of psychosocial rehabilitation services (CPT Code H2018 – psychosocial rehabilitation *per diem*), the service must (a) be medically necessary as defined by TCA § 71-5-144(a)(2) and implemented through the Guidelines of the Department of Health and Department of Environment and Conservation, Bureau of TennCare found at Chapter 1200-13-16; (b) comply with all provisions of the TennCare Provider Manual, including but not limited to the requirement that there be a treatment plan for each individual that is developed in consultation with that individual and updated on a regular basis; (c) comply with the treatment plan so developed; (d) comply with the provisions of the Contractor Risk Agreement; (e) include a face-to-face session with the client, which session must be provided by a mental health practitioner (psychologist or psychiatrist) or a Tennessee Certified Peer Specialist.

12. On none of the 52 occasions detailed below upon which Dodson visited the AIM Center and for which the AIM Center charged the TennCare program, did the Defendant comply with the requirements permitting a charge to be made.

13. Dodson is only one of hundreds of individuals who are or were during the relevant time period members of the Defendant AIM Center and who are or were qualified to receive benefits from the TennCare program administered by the State of Tennessee. Upon information and belief, Dodson avers that he was and is in no way unique or unusual with respect to his membership in the Defendant AIM Center, and accordingly Dodson believes that the Defendant has routinely and consistently submitted charges to the TennCare program for services rendered to hundreds of other persons similar to Dodson, which claims were also false and unsubstantiated.

4

## Specific False Claims

14. Dodson visited the AIM Center on 15 April 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Vic Moore. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

15. The Defendant charged TennCare $75.00 for services allegedly provided to Dodson on 06 May 2009. Dodson, a prolific note-taker, has no notes indicating or recollection that he even visited the AIM Center on said date. Further, the records of the AIM Center itself indicate "Reception desk attendance data not found."

16. Dodson visited the AIM Center on 14 May 2009 to attend a startup meeting for a support group, and was present in the building for approximately two hours. Although AIM staff was present to conduct the meeting, Dodson received no services from AIM personnel that permitted the Defendant to make a $75.00 charge to TennCare. The AIM Center wrongfully charged the TennCare program $75.00 for this visit to the Center.

17. Dodson visited the AIM Center on 18 May 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Sheryl McCormick. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner

5

or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

18. Dodson visited the AIM Center on 19 May 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Sheryl McCormick. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

19. Dodson visited the AIM Center on 20 May 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Sheryl McCormick. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

20. Dodson visited the AIM Center on 21 May 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Sheryl McCormick. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

21. Dodson visited the AIM Center on 22 May 2009, to attend a WRAP (Wellness Recovery Action Plan) class given by Sheryl McCormick. The class was funded by a grant from the Tennessee Department of Mental Health. The AIM Center only provided the space to hold the class. Dodson's only interaction with AIM personnel on this occasion was to consume food served by AIM staff persons. Dodson received no compensable services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

22. Dodson visited the AIM Center on 28 May 2009 to attend a startup meeting for a support group, and was present in the building for approximately two hours. Although AIM staff was present to conduct the meeting, Dodson received no services from AIM personnel that permitted the Defendant to make a $75.00 charge to TennCare. The AIM Center wrongfully charged the TennCare program $75.00 for this visit to the Center.

23. Dodson visited the AIM Center on 04 June 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

24. Dodson visited the AIM Center on 09 June 2009 to attend a Region III Planning and Policy Council meeting, at which Dodson was elected chair of the Adult Services Committee. The AIM Center only provided space for the meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson

7

received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

25. Dodson visited the AIM Center on 11 June 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

26. Dodson visited the AIM Center on 09 July 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no face-to-face services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. Before the support group meeting, Dodson met with Lisa Willison (AIM program director) and Lt. Vaughn (Chattanooga Police Department) to discuss a crisis intervention team program. This meeting was not for purposes of treatment, and no mental health services were provided to Dodson. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

27. Dodson visited the AIM Center on 16 July 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no face-to-face services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. Before the support group meeting, Dodson met again with Lisa Willison and Lt. Vaughn to discuss a crisis intervention team program. This meeting was not for purposes of treatment, and no mental health services were provided to Dodson. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

28. Dodson visited the AIM Center on 23 July 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

29. Dodson visited the AIM Center on 30 July 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

30. Dodson visited the AIM Center on 06 August 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

31. Dodson visited the AIM Center on 13 August 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

32. Dodson visited the AIM Center on 21 August 2009 for approximately 30-45 minutes, because his birthday was in August. He ate some cold pizza. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson

9

Case 1:11-cv-00182-HSM-WBC   Document 1   Filed 07/08/11   Page 9 of 19   PageID #: 9

received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

33. Dodson visited the AIM Center on 27 August 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

34. Dodson visited the AIM Center on 28 August 2009 for approximately 15 minutes. He met with Lisa Willison and Lt. Cribbs from the Hamilton County Sheriff's Department, to discuss a crisis intervention team program. This meeting was not for purposes of treatment, and no mental health services were provided to Dodson. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

35. Dodson visited the AIM Center on 03 September 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

36. The Defendant charged TennCare $75.00 for services allegedly provided to Dodson on 04 September 2009. Dodson has no recollection and no notes that he visited the AIM Center on said date for any purpose.

37. The Defendant charged TennCare $75.00 for services allegedly provided to Dodson on 21 September 2009. Dodson, upon information and belief, believes he simply ran into the building for a few minutes on this date to make sure that the facility was ready for the

10

Case 1:11-cv-00182-HSM-WBC   Document 1   Filed 07/08/11   Page 10 of 19   PageID #: 10

CIT meeting the following day. In any event, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist.

38. Dodson visited the AIM Center on 22 September 2009 for a CIT on-site visit. He had two separate meetings with CIT officers, each lasting approximately one hour. On this occasion, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

39. Dodson visited the AIM Center on 24 September 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

40. Dodson visited the AIM Center on 01 October 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

41. Dodson visited the AIM Center on 08 October 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

42. Dodson visited the AIM Center on 22 October 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

43. Dodson visited the AIM Center on 29 October 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

44. Dodson visited the AIM Center for three hours on 04 November 2009 to attend a Region III Planning and Policy Council meeting (Dodson was the Adult Services Committee Chair of that organization). The AIM Center provided space for the meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

45. Dodson visited the AIM Center on 12 November 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

46. Dodson visited the AIM Center on 19 November 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from

AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

47. Dodson visited the AIM Center on 25 November 2009 solely for the purpose of eating a Thanksgiving meal provided by the facility. On this occasion, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

48. Dodson visited the AIM Center on 03 December 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

49. Dodson visited the AIM Center on 10 December 2009 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

50. Dodson visited the AIM Center on 14 January 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

51. Dodson visited the AIM Center on 21 January 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

52. Dodson visited the AIM Center on 28 January 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

53. Dodson visited the AIM Center on 03 February 2010 for the purpose of attending a Region III Planning and Policy Council meeting. The AIM Center provided a room for the meeting. Dodson also met with a Mrs. Courtright concerning the Bridge Project. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

54. Dodson visited the AIM Center on 04 February 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

55. Dodson visited the AIM Center on 11 February 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

56. Dodson visited the AIM Center on 17 February 2010 for the purpose of attending a Region III Policy and Planning Council needs-assessment meeting. The AIM Center provided a room for the meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

57. Dodson visited the AIM Center on 18 February 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

58. Dodson visited the AIM Center on 25 February 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

59. Dodson dropped in at the AIM Center on 01 March 2010 to make sure that the facility was ready for the CIT students the following day. On this occasion, no AIM staff person

15

Case 1:11-cv-00182-HSM-WBC   Document 1   Filed 07/08/11   Page 15 of 19   PageID #: 15

was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

60. Dodson visited the AIM Center on 02 March 2010 for two meetings with CIT officers which together lasted approximately two hours. The AIM Center provided a room for the meetings. On this occasion, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

61. Dodson visited the AIM Center on 04 March 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

62. Dodson visited the AIM Center on 11 March 2010 to attend a support group meeting. On this occasion, no AIM staff person was present, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

63. Dodson visited the AIM Center on 12 March 2010 to pick up some forms. Dodson was in the building no longer than 25 minutes. On this occasion, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

16

Case 1:11-cv-00182-HSM-WBC   Document 1   Filed 07/08/11   Page 16 of 19   PageID #: 16

64. Dodson visited the AIM Center on 22 March 2010 to drop off a complaint in the office of the Director of the facility. On this occasion, Dodson received no services from AIM personnel, and Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

65. Dodson visited the AIM Center on 31 March 2010 for approximately 35 minutes to attend a "hearing" at which his membership at the facility was "suspended" for 6 months. Although AIM staff persons were present at the "hearing," Dodson received no services or treatment from a mental health practitioner or a Tennessee Certified Peer Specialist. The AIM Center charged the TennCare program $75.00 for this visit to the Center.

66. Upon information and belief, the Relator believes that the Defendant has routinely charged the TennCare program for each time a member covered by TennCare appeared on the premises, regardless of the purpose for which the member was present, and regardless of whether the Defendant provided any covered service to the member.

## Federal False Claims Act

67. Each of the occurrences detailed in Paragraphs 14-65 constitutes a separate false claim in violation of 31 USC § 3729 of the Federal False Claims Act.

68. The Defendant is liable to the United States Government for a civil penalty not less than $5,500.00 and not more than $11,000.00 plus three times the amount of damages sustained by the Government for <u>each</u> of the occurrences set forth in Paragraphs 14-65 above, and for each additional false claim first discovered during investigation and discovery of this matter, pursuant to 31 USC § 3729(a)(1).

17

## Tennessee False Claims Act

69. Each of the occurrences detailed in Paragraphs 14-65 constitutes a separate false claim in violation of Tennessee Code Annotated § 71-5-182 of the Tennessee False Claims Act.

70. The Defendant is liable to the State of Tennessee for a civil penalty not less than $5,000.00 and not more than $25,000.00 plus three times the amount of damages sustained by the State of Tennessee for <u>each</u> of the occurrences set forth in Paragraphs 14-65 above, and for each additional false claim first discovered during investigation and discovery of this matter, pursuant to TCA § 71-5-182(a)(1).

71. The Relator respectfully requests a jury comprised of the maximum number of persons permitted under federal law and the local rules of court to try the issues when joined.

**WHEREFORE PLAINTIFF PRAYS** that:

a. This Complaint be served upon the government of the United States of America pursuant to Rule 4(d)(4), *FRCP*;

b. Upon the final hearing in this cause the United States of America be awarded a judgment against the Defendant, by reason of the violations of the Federal False Claims Act as set forth herein, in an amount equal to three times the amount of damages sustained by the United States by Defendant's action, plus the maximum civil penalty permitted under 31 USC § 3729 for each such violation.

c. The Court award to Relator, as the *qui tam* plaintiff, the maximum amount allowed pursuant to 31 USC § 3730(d) of the Federal False Claims Act, upon the recovery of the United States;

d. Upon the final hearing in this cause the State of Tennessee be awarded a judgment against the Defendant, by reason of the violations of the Tennessee False Claims Act

as set forth herein, in an amount equal to three times the amount of damages sustained by the State of Tennessee by Defendant's action, plus a civil penalty of not less than $5,000.00 and not more than $25,000.00 for each such violation, all pursuant to TCA § 71-5-182.

e. The Court award to Relator, as the *qui tam* plaintiff, the maximum amount allowed pursuant to TCA § 71-5-182(a)(1) of the Tennessee False Claims Act, upon the recovery of the State of Tennessee;

f. The Court award to Relator all reasonable expenses found by the Court to have been necessarily incurred, plus reasonable attorney fees and costs;

g. The Court award Plaintiff and Relator such other, further and general relief to which the Court deems them fairly and equitably entitled.

Respectfully submitted,

**LAW OFFICES OF ROBERT W. SAUSER**

By: _/s/ Robert W. Sauser_
Robert W. Sauser, BPR No. 006217
300 Forest Avenue, Suite C
Chattanooga, TN 37405
423.535.9387 (p)
423.468.2599 (f)
rsauser@sauserlawfirm.com
*Attorney for Relator, Dennis Dodson*

19